**BARTON'S DISPOSAL SERVICE, INC.,**
**Plaintiff–Appellant,**

v.

**TIGER CORP., d/b/a Southwest Disposal, Inc. and Pine Hill Landfill,**
**Defendants–Appellees.**

**No. 87–2887.**

United States Court of Appeals,
Fifth Circuit.

Oct. 31, 1989.

Jackee Cox, Longview, Tex., for plaintiff-appellant.

Mike A. Hatchell, Greg D. Smith, Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Tyler, Tex., for defendants-appellees.

Before BROWN, JOHNSON and DAVIS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

*Antitrust and Waste Disposal*

Barton's Disposal, Inc. (Barton's) brought this antitrust action against Southwest Disposal, Inc. (Southwest)[1] and Pine Hill Landfill (Pine Hill), alleging monopolization and attempted monopolization of the solid waste collection business in two sub-markets, the Longview area of Gregg County and the Tyler area of Smith County.

Barton's claim regarding monopolization and attempted monopolization in the Tyler sub-market was based on (i) evidence that Southwest successfully got the City of Tyler to grant it monopolistic control of a city owned landfill, an essential facility to the solid waste disposal business in the two sub-markets, and (ii) on evidence of predatory pricing by Southwest in the Tyler sub-market. Pursuant to F.R.Civ.P., Rule 49(a),[2] the jury returned a verdict in response to interrogatories framed by the trial court,[3] and the trial court entered judgment for Southwest.

---

1. Southwest was known by the name Tiger Corporation during much of the history of this case. It now goes by the name Southwest and is referred to as such in this opinion.

2. F.R.Civ.P. Rule 49(a) provides:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; ... If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury.

3. The text of the interrogatories submitted to the jury and the jury's answers are as follows (bracketed numbers inserted to illustrate many of the problems relating to the charge grow out of the fact that nearly every one of these issues is multifarious in that each asks for more than one fact finding by the jury:

<u>Interrogatory No. 1</u>

Do you find from a preponderance of the evidence that Defendant Tiger Corporation [i] entered into contracts or combinations that unreasonably restrained trade in the Tyler area of Smith County or the Longview area of Gregg County and [ii] such restraint, if any, proximately caused injury to Plaintiff's business or property?

Answer: "We do" or "We do not" as to each area.

Tyler area of Smith County: We do

Longview area of Gregg County: We do

### Interrogatory No. 2

Do you find from a preponderance of the evidence that Defendant [i] possessed monopoly power in the commercial waste collection market and willfully acquired or maintained that power, if any, in the Tyler area of Smith County or the Longview area of Gregg County, and [ii] such acquisition or maintenance of monopoly power, if any, proximately caused injury to Plaintiff's business or property?

Answer: "We do" or "We do not" as to each area.

Tyler area of Smith County: We do

Longview area of Gregg County: We do

### Interrogatory No. 3

Do you find from a preponderance of the evidence that Defendant [i] attempted to monopolize the commercial waste collection business in the Tyler area of Smith County or the Longview area of Gregg County, and [ii] such attempt to monopolize, if any, proximately caused injury to Plaintiff's business or property, if any?

Answer: "We do" or "We do not" as to each area.

Tyler area of Smith County: We do

Longview area of Gregg County: We do

### Interrogatory No. 4

Do you find from a preponderance of the evidence that Defendant Tiger Corporation [i] possessed control over a facility that was essential to competitive viability in the commercial waste disposal market in the Tyler area of Smith County or the Longview area of Gregg County, [ii] that such facility cannot practically be duplicated, [iii] that Defendant unreasonably denied Plaintiff use of that facility, and [iv] that such denial, if any, proximately caused injury to Plaintiff's business or property?

Answer: "We do" or "We do not" as to each area.

Tyler area of Smith County: We do

Longview area of Gregg County: We do

Answer Interrogatories No. 5, No. 6, and No. 7 only if you have answered Interrogatories No. 1, No. 2, No. 3 or No. 4 "We do." Otherwise answer Interrogatory No. 8.

### Interrogatory No. 5

Do you find from a preponderance of the evidence that [i] the anticompetitive conduct that you found in Interrogatories No. 1, No. 2, No. 3 or No. 4, was undertaken pursuant to a valid state policy adopted by a municipality and [ii] that the municipality actively supervised Defendant's anticompetitive conduct?

Answer "We do" or "We do not" as to each area and each type of conduct referred to in the preceding interrogatories.

Tyler area of Smith County

Conduct described in Interrogatory No. 1: We do not

Conduct described in Interrogatory No. 2: We do not

Conduct described in Interrogatory No. 3: We do not

Conduct described in Interrogatory No. 4: We do not

Longview area of Gregg County

Conduct described in Interrogatory No. 1: We do not

Conduct described in Interrogatory No. 2: We do not

Conduct described in Interrogatory No. 3: We do not

Conduct described in Interrogatory No. 4: We do not

### Interrogatory No. 6

Do you find from a preponderance of the evidence that [i] the anticompetitive conduct referred to in Interrogatories No. 1, No. 2, No. 3 or No. 4, resulted from Defendant's good faith effort to influence public officials to grant an anticompetitive contract or monopoly power to Defendant?

Answer "We do" or "We do not" as to each area and each type of conduct referred to in the preceding interrogatories.

Tyler area of Smith County

Conduct described in Interrogatory No. 1: We do

Conduct described in Interrogatory No. 2: We do

Conduct described in Interrogatory No. 3: We do

Conduct described in Interrogatory No. 4: We do

Longview area of Gregg County

Conduct described in Interrogatory No. 1: We do

Conduct described in Interrogatory No. 2: We do

Conduct described in Interrogatory No. 3: We do

Conduct described in Interrogatory No. 4: We do

### Interrogatory No. 7

What sum of money, if now paid in cash, would reasonably compensate Plaintiff for its injury to business or property, if any, proximately caused by Defendant's anticompetitive conduct referred to in Interrogatories No. 1, No. 2, No. 3 or No. 4?

Answer in dollars and cents as to each area and each type of conduct referred to in the preceding interrogatories.

Tyler area of Smith County

Conduct described in Interrogatory No. 1: $10,000.00

Conduct described in Interrogatory No. 2: $10,000.00

Conduct described in Interrogatory No. 3: $30,000.00

Conduct described in Interrogatory No. 4: $50,000.00

Longview area of Gregg County

Conduct described in Interrogatory No. 1: $0.00

Conduct described in Interrogatory No. 2: $0.00

Barton's appeals on the basis that the jury instructions on *Noerr–Pennington* were erroneous in two respects: (i) because the special interrogatories did not adequately differentiate between Southwest's associations with the cities of Tyler and Longview on the one hand and Southwest's purely private, including predatory, activities in Tyler on the other, they permitted the jury to apply Noerr–Pennington immunity to what was strictly private conduct by Southwest unrelated to any legislative lobbying efforts with the municipal entities; and (ii) the trial court's charge to the jury regarding the nature of *Noerr–Pennington* immunity was incorrect because the trial court did not adequately distinguish between the two types of contracts entered into by Southwest, those with the governmental agencies of the Cities of Tyler and Longview on the one hand and those with other private business organizations on the other hand, thus also allowing the jury to apply Noerr–Pennington immunity to purely private activity with private, non-governmental concerns by Southwest again, wholly unrelated to any legislative lobbying efforts with these municipal entities.

We agree with Barton's argument that the trial court erred, essentially by charging the jury that *Noerr–Pennington* encompassed both the contracts with the city

governments and the private conduct of Southwest unrelated to these municipalities, and by placing an incorrect burden of proof on Barton's.

Although we agree with Barton's arguments, we must nonetheless affirm that portion of the judgment regarding the City of Longview because the jury found no actual damages.[4] We, however, reverse that portion of the judgment regarding the City of Tyler and the private activities of Southwest in that submarket and remand for new trial.

*In the Beginning*

Southwest entered the Gregg and Smith County sub-markets as a solid waste collection business in 1966. Southwest became the dominant company in both sub-market areas, having approximately 66% of the Tyler sub-market by 1986. For its Tyler area operations, Southwest had access to a landfill owned and operated by the City of Tyler. As part of its Longview area operations, Southwest also operated the Pine Hill Sanitary Landfill under license from the City of Longview.

Barton's entered the solid waste disposal business in the Tyler and Longview sub-markets in 1978. Barton's did not grow as aggressively as Southwest, but did have some 8% of the Tyler sub-market by 1986.[5]

Conduct described in Interrogatory No. 3: $0.00
Conduct described in Interrogatory No. 4: $0.00
Interrogatory No. 8
Do you find from a preponderance of the evidence that Defendant Tiger Corp. entered into non-competition agreements with competitors in the Longview area of Gregg County?
We do
(Answer "We do" or "We do not")
Answer Interrogatory No. 9 only if you have answered Interrogatory No. 8 "We do."
Interrogatory No. 9
Do you find from a preponderance of the evidence that [i] Defendant's non-competition agreements, if any, were related to legitimate business transactions, [ii] were necessary to protect Defendant's business interest, and [iii] were no more restrictive than reasonably necessary to protect that interest?
We do not
(Answer "We do" or "We do not")
Answer Interrogatory No. 10 only if you have answered Interrogatory No. 8 "We do."

Interrogatory No. 10
What sum of money, if now paid in cash, would reasonably compensate the Plaintiff for injury to business or property, if any, proximately caused by the anticompetitive agreement, if any?
$0.00
(Answer in dollars and cents, if any)

| 4/13/87 | Brenda Herrin |
|---------|---------------|
| date | foreperson |

4. *Multiflex, Inc. v. Samuel Moore,* 709 F.2d 980, 986–987 (5th Cir.1983) (In private antitrust cases, showing of injury requires fact of damage and some general proof regarding the amount of damage.); *Nichols v. Mobile Bd. of Realtors,* 675 F.2d 671, 675 (5th Cir. Unit B, 1982) ("Private antitrust liability under section 4 of the Clayton Act [providing a civil cause of action for Sherman Act violations] requires the showing of (1) a violation of the antitrust laws, (2) the fact of damage, and (3) some indication of the amount of damage.").

5. Other competitors in the Tyler sub-market area included the City of Tyler, Compac, and the

Barton's filed suit against Southwest in the District Court on October 19, 1982, alleging antitrust violations. Count I of the complaint alleged violations of § 3 of the Sherman Antitrust Act, specifically that Southwest engaged in attempting to monopolize and monopolization of the solid waste disposal business in Smith and Gregg Counties. In support of this claim, Barton's alleged, among other things, that Southwest engaged in predatory pricing. Specifically, Barton's claimed that Southwest cut prices, up to 50% in some cases, to take customers away from Barton's.[6]

Upon the close of all evidence, the trial court, wisely[7] undertaking to follow Rule 49(a), submitted to the jury special interrogatories which ostensibly required the jury to make specific findings of fact regarding various claims raised by Barton's and the parties.[8]

On appeal, Barton's complains that the trial court erred in (i) instructing the jury that *Noerr–Pennington* immunity applied to purely private commercial activity, (ii) submitting to the jury impermissibly broad, multifarious and ambiguous interrogatories that compounded the error regarding the application of *Noerr–Pennington* immunity, and (iii) in effect, combining the broad special interrogatories with a special interrogatory specifically addressing the *Noerr–Pennington* issue which resulted either in logically and legally inconsistent findings by the jury or an impossible task for the jury.

We reverse the judgment regarding the Tyler submarket on the basis that the trial court erred in submitting to the jury interrogatories that failed to distinguish ade-

quately between the various types of commercial activity of Southwest occurring in the Tyler submarket thus allowing the jury to mistakenly apply the *Noerr–Pennington* governmental petition doctrine to private commercial activity wholly unrelated to governmental importunity. We affirm the judgment regarding the Longview submarket both because Barton's neither complained of nor proved separate private predatory activity by Southwest in that submarket and because the jury found no actual dollar damages for the submarket.

## Standard of Review

■ Generally, a trial court is afforded great latitude in the framing and structure of the instructions and special interrogatories given to the jury,[9] so much so since we are loath to disturb that discretion absent a showing of abuse of discretion.[10]

■ When reviewing the form or content of special interrogatories it is essential that adequate objections were timely made. The requirement is not technical nor technically applied. The purpose is to afford the trial court the opportunity of correcting possible errors. Thus, we have held that:

> a party preserves a claim of error either by proposing and being denied a special interrogatory or by objecting to a proposed special interrogatory before the jury has retired.... Either method serves the ultimate purpose of directing the trial court's attention to the issue.... A final requirement is that each party desiring to preserve the claim of error must object.

Hanna Brothers. In Longview, Southwest and Barton's competed against the City of Longview, Compac/Redicon, Har–D–Pac, East Texas Waste Disposal and Cherokee Waste.

**6.** In Count II of its complaint, Barton's also alleged violations of the Robinson–Patman Act, citing the same evidence as in Count I. Count III of Barton's complaint alleged violations under Texas Law of Intentional Torts, again incorporating the same evidence as in Counts I and II.

**7.** *See* Brown, *Federal Special Verdicts: The Doubt Eliminator*, (1967) 44 F.R.D. 338; *Guidry*

*v. Kem Mfg. Co.*, 598 F.2d 402, 405–06 (5th Cir.1979).

**8.** Federal Rules of Civil Procedure, Rule 49(a) permits the trial court to "require a jury to return only a special verdict in the form of a special written finding upon each issue of fact."

**9.** *J.C. Motor Lines v. Trailways Bus System*, 689 F.2d 599, 603 (5th Cir.1982).

**10.** *Dreiling v. General Electric Company*, 511 F.2d 768, 774 (5th Cir.1975), *Abernathy v. Southern Pacific Co.*, 426 F.2d 512, 514 (5th Cir.1970).

*Chemetron Corp. v. Business Funds, Inc.*[11]

■ Barton's clearly satisfied this requirement. Barton's proposed a special interrogatory that specifically delineated between the public/private and the private/private claims in Tyler.[12] Barton's also objected to the instructions and interrogatories as given to the jury.[13] Whether the special interrogatories were erroneous is fully open to review.

■ Our review of special interrogatories submitted to a jury calls for an inquiry into several specific factors:

(i) whether, when read as a whole and in conjunction with the general charge the interrogatories adequately presented the contested issues to the jury; (ii) whether the submission of the issues to the jury was "fair"; and (iii) whether the "ultimate questions of fact" were clearly submitted to the jury.

*Dreiling v. General Electric Co.*[14] Abuse of the discretion is established if the Charge and Interrogatories fail to meet the *Dreiling* factors.

Furthermore, while *Dreiling* places a substantial burden[15] on the trial court to ensure that the jury has been adequately and clearly presented with each of the issues that have been contested at trial, obviously, academic perfection is not demanded.[16] The process of proposed Interrogatories and objections to the Charge all work together in assuring an acceptable structure by which the critical fact issues are submitted for resolution by the jury independent of which side will win.

### Waste Not, Want Not

Barton's complained about three types of antitrust violations, that (i) in the two sub-markets, Southwest monopolized the use of both the Tyler landfill and a publicly owned essential facility, Pine Hill, (ii) Southwest, under the *Noerr–Pennington* "sham" exception, impermissibly lobbied city governments to monopolize and attempt to monopolize waste disposal business in the two sub-markets, and (iii) Southwest engaged in predatory pricing activities to drive Barton's out of the waste disposal business in the Tyler sub-market.

■ The *Noerr–Pennington* doctrine recognizes that, under the First Amend-

---

**11.** 682 F.2d 1149, 1171 (5th Cir.1982) (citations omitted).

**12.** Barton's Proposed Interrogatory VI.3 specifically directed the jury's consideration to claimed predatory pricing unrelated to governmental importunities.

Do you find by a preponderance of the evidence that Tiger Corporation [Southwest] engaged in any of the following predatory acts for the purpose of controlling prices or destroying competition in the commercial solid waste collection business in the Tyler area:
... (e) By predatory pricing in the Tyler area sub-market.
Barton's Proposed Interrogatory VI.3.

**13.** Immediately after the jury was charged, Barton's objected contending that

in order to reach the issue of damages on all of the Plaintiff's claims, the interrogatories are structured such that the jury must make a finding as to the State action defense and the *Noerr–Pennington* defense. Plaintiff contends that these two defenses apply only to actions involving the contract with the City of Tyler and the contract with the City of Longview; that they do not and cannot apply to the principal focus, which was Defendant's anticompetitive pricing practices at the Pine Hill Landfill. Our damages were computed primarily on the difference between the price to Southwest Disposal and the price to our client for use of the Pine Hill Landfill, and there simply is no way that the State action issue or the *Noerr–Pennington* defense can be relevant to those claims, because the State statute and the State regulatory mechanism simply don't reach the conduct of private parties, when dealing with other private parties.

We would, therefore, request a clarifying instruction to the jury that the state action defenses and *Noerr–Pennington* defenses apply only to the contracts with the City of Longview and the City of Tyler.
TR 21–22.

Although the quoted objection may not have covered all of the deficiencies of the trial court's charge, in the light of the proffered interrogatory (see N. 11, supra), and the specific request for a clarifying instruction, were adequate to direct this knowledgeable trial judge to the persistent theory repeatedly advocated by Barton's advocate.

**14.** 511 F.2d 768, 774 (5th Cir.1975) (citations omitted).

**15.** See, Brown, The Doubt Eliminator.

**16.** *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 332 (5th Cir.1981).

ment, business entities have the right to advocate policies to federal, state and local government bodies that may destroy competitors. As this Court has written, the "principle thus emerging from these decisions [*Noerr* and *Pennington*] is that genuine efforts to influence governmental decisionmaking are to be encouraged, not penalized through the application of the antitrust laws."[17] The "sham" exception to the doctrine holds that, nonetheless, it is illegal to advocate policies under color of *Noerr–Pennington* that are actually nothing more than attempts to interfere directly with the business of a competitor.

■ The *Noerr–Pennington* defense, thus, shields a business entity when it has engaged in some sort of lobbying activity of a governmental body. Direct interference in the business of a competitor is not shielded even though a governmental body is incidentally connected to the activity. With this interpretation of *Noerr–Pennington* in mind we point out that Barton's made three types of claims, two involved monopolistic activities by Southwest through the lobbying of city governments, the third was an allegation of direct interference by predatory pricing in Barton's business relations with its customers.[18] Because Barton's did allege an antitrust violation based on purely private commercial activity by Southwest, we must determine whether or not the jury was prevented either by the form or content of the interrogatories or the accompanying general instructions from reaching a verdict for Barton's on this one claim unaffected by any *Noerr–Pennington* problems.[19]

Regarding the predatory pricing issue, an examination of the special interrogatories submitted to the jury by the trial court[20] shows that the trial court structured the special interrogatories to reflect the allegations in each sub-market zone.

The special interrogatories, thus, asked the jury to reach conclusions regarding the monopolization claim in Tyler and in Longview, the use of Pine Hill and the Tyler operated landfill the effect thereof on the sub-markets of Tyler and Longview, and the applicability of *Noerr–Pennington* immunity to these activities.

■ Interrogatories 2 and 3 seem to be the closest to identifying to the jury Barton's predatory pricing claim and the jury answered both those interrogatories affirmatively, finding that Southwest both monopolized and attempted to monopolize the Tyler sub-market. The trial court then instructed the jury that if the jury had answered Interrogatories No. 1, 2, 3, or 4 they should then answer Interrogatory No. 6. Interrogatory No. 6 inquired whether the anticompetitive conduct found to exist in Interrogatories No. 1, 2, 3, or 4 resulted from Southwest's efforts to influence public officials. This was, in the war weary, worn out expression, not only mixing apples and oranges. Rather, it was mixing private (here predatory) acts for which there is no antitrust immunity, and the acts of petitioning public officials which have a constitutionally inspired immunity from antitrust consequences.

The special interrogatories, thus, did not adequately present the distinct third claim, the predatory pricing allegation in Tyler, to the jury. Instead, by asking the jury to decide if *Noerr–Pennington* immunity applied generally to the Tyler sub-market and not identifying the separate claims that were made in the Tyler sub-market, the trial court permitted the jury to apply *Noerr–Pennington* immunity, which the jury could legitimately have found to be applicable to the government lobbying activities of Southwest in Tyler, to what is essentially private commercial activity

---

**17.** *In re Burlington Northern, Inc.,* 822 F.2d 518, 524 (5th Cir.1987).

**18.** At trial, Barton's presented witnesses who testified that Southwest kept two price cards and offered prices that were substantially less when competition entered the sub-market area. Several examples of such price cards were offered in evidence.

**19.** On accepted principles of *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the claim was properly before the trial court.

**20.** N. 2, supra.

which also occurred in Tyler, the predatory pricing.

### A Wasted Charge?

 Barton's also contends that the charge as well as the special interrogatories was defective because the trial court erred by charging the jury that *Noerr–Pennington* encompassed both the contracts with the city governments and private activity,[21] and by placing an incorrect burden of proof on Barton's.[22]

The deficiencies in the charge more than meet our standard for reversal that the charge as a whole must leave us "with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." [23] In the instant case, we have such a substantial and ineradicable doubt. The charge, thus, was defective.

### A Verdict—A Terrible Thing to Waste

Given the error in the trial court's special interrogatories and accompanying general charge, we conclude that the judgment regarding Southwest's activities in Tyler must be reversed. We do not reverse the judgment based on the jury's verdict regarding the Longview sub-market because the jury found no actual dollar damages for Southwest's conduct in the Longview sub-market.[24] Consequently we affirm that portion of the judgment based on the verdict.

For reasons pointed out, we hold that the special interrogatories and accompanying general charge are defective regarding Barton's claims raised for Southwest's activities in Tyler. The jury not only awarded monetary damages against Southwest because of its activities in Tyler which certainly implies that the jury found merit in Barton's contentions regarding that submarket. Rather, the jury answered "We do" to Interrogatories No. 1, 2, 3, and 4 which sufficiently included the charged fact of predatory pricing and other private, monopolistic practices by Southwest.

The judgment regarding the Tyler claims is therefore reversed and remanded for a new trial.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

W. EUGENE DAVIS, Circuit Judge, dissenting:

Because I believe the district court's charge and the interrogatories it submitted to the jury adequately framed the issues in this case, I would affirm the judgment the district court entered on the verdict.

The majority concludes that this entire case must be retried because it cannot determine whether the jury erroneously applied the *Noerr–Pennington* defense, and absolved the defendant of liability for purely private conduct.

The court's charge plainly limits application of the *Noerr–Pennington* defense to

**21.** The relevant portion of the charge stated:

The Court instructs you that, even if you should find that Defendant restrained or monopolized trade by its contractual arrangements, or monopolized or attempted to monopolize the commercial waste collection market, Defendant is not liable for anti-competitive activity or results, if Defendant establishes either of the following defenses [state action or *Noerr–Pennington*] by a preponderance of the evidence.

**22.** The trial court charged the jury with the substance of the *Noerr–Pennington* defense and stated that the defense could be overcome if the plaintiff proved that it was a sham. In further defining the sham exception, the trial court instructed the jury that:

[t]he antitrust laws do not reach a situation where a government agency acting as a buyer,

seller, or competitor in the marketplace voluntarily becomes a party to agreements that restrain trade, unless the government has been made the victim of a private party's market power. If a monopolist uses his market power to dictate the terms of the trade to the government, no legitimate petitioning conduct would be involved. If this showing is made, Defendant must prove that its petitioning activity was substantially motivated by a genuine desire for government action. If a Defendant establishes such motive, any actions taken to acquire the anti-competitive contract or any monopoly resulting from the contract cannot subject Defendant to liability under the antitrust laws. (TR 15–16).

**23.** *Pierce v. Ramsey Winch Co.,* 753 F.2d 416, 425 (5th Cir.1985).

**24.** N. 4, supra.

liability arising from the defendant's lobbying efforts with city officials. In explaining the scope of the *Noerr–Pennington* defense, the court charged: "If the defendant demonstrates that the conduct complained of was the result of its lobbying efforts, *that* anti-competitive activity or anti-competitive result is not subject to antitrust laws. ..." Record Vol. 5, page 15 (emphasis added).

After receiving this charge, the jury then declared in answer to interrogatory six that "the anticompetitive conduct referred to in [interrogatories one through four] resulted in defendant's good faith effort to influence public officials. ..."

Although counsels' closing argument was not included as part of the record on appeal, the plaintiff was certainly entitled to argue to the jury that if it found that the defendant engaged in predatory pricing or other purely private anticompetitive conduct, it should answer interrogatory six "no." The "yes" answer to this interrogatory tells me the jury found that all of the defendant's anticompetitive conduct was the result of its lobbying efforts with city officials.[1]

There are no perfect trials and this one is no exception, but in my view the issues were adequately framed and the jury's verdict allows us to discern its findings. I see no necessity for a retrial.[2]

---

1. The district court's special verdict form did not instruct the jury to skip interrogatory seven, the damage interrogatory, if it found the *Noerr–Pennington* defense available to defendants. I do not understand therefore how the jury's response to the damage interrogatory supports the majority's conclusion that the defendant engaged in private anticompetitive conduct.

2. If we assume that the jury's responses to the interrogatories cast doubt on whether it applied the *Noerr–Pennington* defense to plaintiff's purely private predatory pricing claim, I would restrict the retrial to that predatory pricing claim. I would also give the district court discretion to determine whether to retry damages on the predatory pricing claim or to accept the $30,000 sum awarded in interrogatory seven (3) which included plaintiff's predatory pricing claim.